566 So.2d 645 (1990)
Kenneth J. VILLANE
v.
Robert F. AZAR.
No. 90-CA-1440.
Court of Appeal of Louisiana, Fourth Circuit.
August 17, 1990.
Writ Denied August 20, 1990.
Craig J. Cimo, Gretna, for plaintiff-appellee.
Ernest E. Barrow, II, Grant & Barrow, Gretna, for intervenor-appellee, H. Charles Gaudin.
Bruce G. Reed, Reed & Reed, New Orleans, for defendant-appellant.
Before SCHOTT, C.J., and GARRISON, BARRY, KLEES, BYRNES, CIACCIO, LOBRANO, WARD and ARMSTRONG, JJ.
SCHOTT, Chief Judge.
This is an election contest governed by LSA-R.S. 14:1401 et seq. Defendant, Robert F. Azar, qualified as a candidate for Judge, Court of Appeal, Fifth Circuit. *646 Plaintiff as a qualified elector challenged Azar's qualification on the ground that he lacked the residency requirement provided by the constitution. The trial court disqualified Azar, and he has appealed. The Supreme Court transferred the appeal to this Court.
In order to qualify for the office of judge of a court of appeal the candidate must have been domiciled in the election area for two years preceding the election. Const. Art. 5, § 24. While a person may have many residences, he has only one domicile which is the place where he has his principal establishment. C.C. art. 38. A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. Art. 41. This intention may be proved by an express declaration in writing registered in the parishes of the old and new residences or in the absence of a declaration by the circumstances. Arts. 42 and 43. While the burden of proof is on the party contesting candidacy, there is a presumption against change of domicile. Messer v. London, 438 So.2d 546 (La.1983). As in any case the factual findings of and inferences drawn by the trial court will not be disturbed on appeal unless clearly wrong.
Azar, who is a medical doctor, owns a very large and expensive house on Lakeshore Drive in New Orleans. He testified as follows: In 1985 he decided to move to Jefferson Parish. He put his house up for sale and moved to a garage apartment on Northline Drive in Jefferson Parish, taking with him some clothes and books and leaving the rest of his belongings at the Lakeshore home. In January, 1989 he bought and moved into a condominimum on Old Hammond Highway in Jefferson. In August, 1989 he moved to a townhouse on Carrollton Street in Jefferson. In February, 1989 he bought a lot on Folse Drive in Metairie and he plans to build a house there when his house in New Orleans is sold. Throughout this period of time his home has been for sale and has remained completely furnished with his belongings. He has a housekeeper on the premises, regularly uses the house in connection with his law practice and for other purposes, and sometimes sleeps there.
In deciding against Azar the trial court noted a number a facts tending to show that the house on Lakeshore Drive continues to be his domicile: He lists in a directory for the internal use of his law firm the New Orleans telephone number; he filed for the homestead exemption on his Lakeshore Drive house in 1988, 1989 and 1990 stating that he resided there; and he signed a number of notarial acts starting in 1986 in which he stated that he resided in New Orleans, including an act of correction dated April 30, 1990. The trial court also noted Azar's failure to file a declaration of intention to change his domicile pursuant to C.C. art. 42.
In addition to these factors specifically noted by the trial court the record contains other facts which tend to disprove that Azar has given up his domicile in New Orleans. Although he claims to have established his new domicile in 1985 at the Northline Drive garage apartment and resided there until January, 1989 he produced no witness to testify that he ever resided there. The only piece of evidence he produced to corroborate his testimony on this point is his voter registration on Northline dated December 19, 1985. While the place where one registers to vote is a legitimate factor to be considered in determining domicile, standing alone it does nothing to prove that the Northline apartment was even a residence much less the principal domestic establishment for Azar during this period of over three years. He was extremely vague as to the residence on Carrollton he now claims as his domicile, not knowing who owns the premises, failing to produce any cancelled checks for rent, and claiming to share the townhouse with one Robert D'Hemecourt and sometimes with one George Ackel, Jr., neither of whom was called to testify. Although ordered to produce documents relating to his utility bills for Carrollton he produced only one cancelled check to the utility company. This is dated August 2, 1990, after he qualified for the election. The check shows his *647 address as Lakeshore Drive in New Orleans as do all his checks written between 1985 and 1990. He keeps only a few books and some clothes on Carrollton with all the rest of his property at the Lakeshore residence. He continues to subscribe to and have the daily newspaper delivered to his Lakeshore residence while D'Hemecourt gets the newspaper at the Carrollton townhouse. As in the case of the Northline apartment there is virtually no evidence to corroborate Azar's testimony that the Carrollton Street townhouse is even a residence much less his principal residence or domicile even though he claims to have lived there for the past year. Azar stated in a petition filed in a New Orleans lawsuit in August, 1990 that he was domiciled in New Orleans, and in a deposition he gave in that same lawsuit in May, 1988 he stated that Lakeshore Drive was his "resident address".
Azar testified that the homestead exemption applications on Lakeshore Drive were erroneously filed by his employees and that the declarations of a New Orleans domicile in the notarial acts were simply erroneous. He established that he has been voting in Jefferson since 1985 and that he used Jefferson addresses since 1986 on auto titles, insurance policies, drivers license, tax returns, bank statements, and credit accounts. However, Azar maintains his medical office in Jefferson and has his secretary handle virtually all of his personal business affairs. Thus, the use of a Jefferson Parish address does little to discredit the notion that Lakeshore Drive is still his domicile. Domicile is a person's principal domestic establishment as contrasted to a business establishment. Messer v. London, supra, at 547.
It was Azar's burden to overcome the presumption against the change in his domicile from New Orleans to Jefferson Parish. Messer, supra at 547. It was incumbent on him to prove the act of residing on Northline and the intention of making his principal establishment there. C.C. art. 41. While putting his house in New Orleans up for sale, changing his voter registration, and using a Jefferson Parish address on some documents may tend to corroborate his expression of an intention to change his domicile,[1] these things do nothing whatsoever to prove that he ever resided at the garage apartment on Northline rather than his mansion on Lakeshore Drive. Only his own uncorroborated testimony would support the conclusion that he ever resided there or at the Old Hammond Highway condominium or at the Carrollton Street townhouse. The trial court simply disbelieved Azar's uncorroborated testimony that he resided at these places and the record does not furnish any basis for this court to substitute its own credibility evaluation for the trial court's.
We have considered whether our affirmation of the trial court's judgment in this case would be inconsistent with our opinion in Tomlinson v. Frazier, 407 So.2d 1385 (La.App. 4th Cir.1982), writ denied 410 So.2d 764. The clear distinction between the cases is made crystal clear upon considering the following language in Tomlinson at page 1389:
From the record as a whole, we cannot say that the trial judge was clearly wrong in his conclusion that defendant neither abandoned nor lost his life-long Louisiana residence by his stay in New York, when, as he testified, he always intended to return to Louisiana. Accordingly the requirement of two years' residence in the state was correctly held met.
Thus, in Tomlinson this court affirmed the trial court's favorable evaluation of Frazier's testimony and affirmed the judgment. In the present case we affirm the trial court's unfavorable evaluation of Azar's testimony.
*648 Furthermore, in Tomlinson this court found that the one year "actually domiciled" requirement (for a candidate for the State House of Representatives) was met from the facts of the case. In the instant case Azar produced no evidence that he ever resided in Jefferson other than his own testimony.
The trial court resolved the facts in favor of plaintiff and against Azar. The court made credibility evaluations and drew inferences from the evidence and testimony. An appellate court will not substitute its own fact findings, credibility calls, and reasonable inferences for those made by the trial court in the absence of manifest error. Since we find no such error and since the record supports the conclusions of the trial court, the judgment is affirmed.
AFFIRMED
LOBRANO, J., concurring in result.
BYRNES and CIACCIO, JJ., dissent.
NOTES
[1] Under the circumstances of the case the author of this opinion assigns no probative value to the fact that Azar put his house up for sale. He testified that he bought a lot on Folse Street in Jefferson Parish for $175,000 in February, 1989 with the intention of building a new house there when his Lakeshore Drive house is sold. This means that he intends to change domicile only if and when his house is sold, but until then his domicile remains on Lakeshore Drive unless he establishes a principal residence elsewhere. He failed to prove that he has done this so far.